UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-80144-CR-Smith(s)(s)(s)

UNITED STATES OF AMERICA

v.

MAURICE SHAZIER,

    Defendant.

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully recommends that the Court sentence defendant Maurice Shazier at the high end of the Guidelines incarceration range.

At sentencing, the Court must calculate a defendant's Guidelines incarceration range and then impose sentence in light of the factors set out in Title 18, United States Code, Section 3553(a). *See generally United States v. Henry*, 1 F.4th 1315, 1323 (11th Cir. 2021); U.S.S.G. § 1B1.1(c). Shazier's Guidelines range is 30–37 months. D.E. 523 ¶ 160. In light of all the statutory sentencing factors, a sentence at the high end of the range is appropriate.

### Seriousness of the offense

The statutory factors include "the nature and circumstances of the offense" and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (a)(2)(A). Shazier's offense was serious. He attempted to steal almost a million dollars and actually stole more than half a million. D.E. 563 ¶ 83 (intended loss of $923,628, actual loss of $573,528); *see also* D.E. 541 at 7

n. 4 (discussing loss calculations). Those are very large sums of money. However, Shazier's crime is more serious than suggested by the dollar figures alone, serious as they are. That is so because of the nature of the programs he defrauded. The COVID-relief EIDL program and the PPP were designed to provide relief to small businesses during the COVID pandemic, which had the potential to create an economic catastrophe. *See generally* D.E. 511 at 45, 62, 109–110; D.E. 563 ¶¶ 10–15. Furthermore, at different times both the PPP and the EIDL program ran out of money; at that point, the programs could not make more loans, until Congress allocated more funding. D.E. 511 at 47–48, 110. In other words, Shazier stole from a program designed to prevent layoffs and provide relief to small businesses during a public health catastrophe, and his theft reduced the funds available for legitimate businesses' loans. This very serious conduct requires a correspondingly severe sentence.

In his motion for variance, Shazier argues that the seriousness of his crime was mitigated by the fact that "he was deceived by [co-defendant Joff] Philossaint about whether his conduct was unlawful." D.E. 556 at 5. However, Shazier does not cite or proffer any evidence in support of this allegation. The allegation is refuted by Philossaint's WhatsApp communications with Shazier, in which Philossaint openly informs Shazier that he can qualify for an EIDL MOD only if he submits a fraudulent tax return to the Small Business Administration ("SBA"). D.E. 484-1 (GX 155) at 16. It is also refuted by the jury's verdict, finding Shazier guilty of knowing fraud.

Shazier also argues that he owned "an actual legitimate business as opposed to a fictional business" and that he invested his loans in his construction business. D.E. 556 at 6. Once again, he fails to cite or proffer the evidence on which relies. Sunrise City Construction Development LLC had approximately $490,000 in revenue in 2019, so it appears to have been an operational company. D.E. 495-6 (GX 171r). However, Jream Vision T.V. LLC had only $5,400 in revenue. D.E. 495-13

(GX 173r). Therefore, Jream T.V. is better characterized as "fictional" than as "actual" or "legitimate." Furthermore, although use of a non-operational business to commit loan fraud is more brazen than use of an operational business, Shazier still used his businesses to steal more than half a million dollars from the American taxpayers, at a time when other actual legitimate businesses needed the same funds. That fact makes his fraud extremely serious, regardless of whether his businesses were legitimate or fictional.

## Deterrence

Shazier's sentence must also reflect the need "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Because of the potential for economic catastrophe during the pandemic, the Paycheck Protection Program and the EIDL program were designed to make it easy for small businesses to apply for and receive loans quickly. However, that design also made it easier for unscrupulous criminals like Shazier to defraud these programs. *See* U.S. Gov't Accountability Office, *GAO-23-105331, COVID Relief: Fraud Schemes and Indicators in SBA Pandemic Programs* at 17 ("[B]ecause the government needed to provide funds and other assistance quickly to those affected by COVID-19 and its economic effects, federal relief programs—including those implemented by SBA—were vulnerable to significant risk of fraudulent activities."). In this unique context, where the urgency of the situation required the government to dispense with some safeguards, the need for deterrence is correspondingly greater. Indeed, the Eleventh Circuit has recently upheld an upward variance in a case of COVID-loan fraud, based primarily on the need for deterrence. As the court of appeals explained,

> While the federal program [the defendant] bilked no longer exists, deterring fraud and other crimes against future multi-billion dollar government programs remains an important sentencing goal. As we had occasion to comment recently, "Like bears to honey, white collar criminals are drawn to billion-dollar government programs."

3

> The crimes are serious and the monetary losses are large . . . . The need for deterrence of government fraud crimes is great.

*United States v. Oudomsine*, 57 F.4th 1262, 1268 (11th Cir. 2023) (quoting *United States v. Howard*, 28 F.4th 180, 186 (11th Cir. 2022)). The government is not seeking an upward variance here. But the considerations discussed in *Oudomsine* support a sentence at the high end of the Guidelines incarceration range.

## Unwarranted Sentencing Disparities

Another statutory factor is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As we pointed out in our response to Shazier's objections to the presentence report, *see* D.E. 541 at 18, Shazier is more culpable than Andre Johnson, a defendant in a related case. With Philossaint's assistance, Johnson applied for fraudulent loans on behalf of one company, D.E. 523 ¶ 82, whereas Shazier applied on behalf of two companies that are included in his loss calculation. Johnson applied for and received three fraudulent loans, D.E. 523 ¶ 25, whereas Shazier applied for five, and received four, that are included in his loss calculation. Johnson caused a loss, actual and intended, of $443,802, D.E. 82, whereas Shazier caused an actual loss of $573,528 and an intended loss of $923,628. And, perhaps most important, Johnson pled guilty to an information, accepting responsibility for his actions at an early stage, whereas Shazier went to trial. Despite all these mitigating factors, Johnson was sentenced to 24 months' incarceration, before receiving credit for his cooperation. D.E. 523 ¶ 7. In order to avoid an unwarranted disparity between Shazier's sentence and Johnson's, Shazier must be sentenced to a term of incarceration considerably longer than Johnson's. For this reason among others, the government recommends that Shazier be sentenced to 37 months' incarceration, at the high end of the Guidelines range.

Shazier argues that he should receive a sentence "substantially less" than that of Philossaint, who was sentenced to 50 months' incarceration. D.E. 556 at 6. The government agrees that Philossaint, one of two organizers of the fraud, was more culpable than Shazier. However, the difference between them should not be exaggerated. Shazier is not just one of Philossaint's many clients. Philossaint prepared fraudulent applications seeking $5,205,654.01 in fraudulent loans. D.E. 563 ¶ 80. Of that total, Shazier's loans accounted for $923,628, or approximately18%. D.E. 563 ¶ 83. That is a significant portion of the loss for a single client. Furthermore, Shazier kept the bulk of the proceeds of his fraudulent loans; he only paid Philossaint kickbacks of approximately 10%. And Philossaint pled guilty to fraud and money laundering; the Court has commented previously that Philossaint only went to trial in an effort to keep his citizenship. By contrast, Shazier's citizenship was in no danger, but he nevertheless went to trial, on all counts. Therefore, a sentence of 37 months' incarceration, more than Johnson's sentence but less than Philossaint's, is appropriate.

WHEREFORE, the government respectfully recommends that the Court sentence Shazier at the high end of his Guidelines incarceration range.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   s/ Marc Osborne
      Assistant United States Attorney
      Court ID# A5500796
      500 S. Australian Avenue, Suite 400
      West Palm Beach, Florida 33401
      Tel: (561) 209-1014
      marc.osborne@usdoj.gov